UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:21cv62337

**MARC WEINBERGER and**
**KAREN WEINBERGER,** individually and
on behalf of those similarly situated,

      **Plaintiffs,**

**vs.**                                  **DEMAND FOR JURY TRIAL**

**NEWREZ LLC d/b/a SHELLPOINT**
**MORTGAGE SERVICES**,

      **Defendant.**
_____/

## CLASS ACTION COMPLAINT

Plaintiffs, MARC WEINBERGER and KAREN WEINBERGER (collectively the "Weinbergers"), by and through their counsel, Scott Hirsch Law Group, PLLC, and The Advocacy Group ("Counsel"), bring this class action lawsuit for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), Section 501.201, *et seq*, Florida Statutes ("Florida Deceptive and Unfair Trade Practices Act" or "FDUPTA"), and Section 559.72(9), Florida Statutes ("Florida Consumer Collection Practices Act" or the "FCCPA"), in accordance with the allegations set forth in the numbered paragraphs that follow.

## NATURE OF THE ACTION

1.     This is a putative class action brought under rule 23 of the Federal Rules of Civil Procedure by Plaintiffs the Weinbergers, on their own behalf and on behalf of all others similarly situated, against one of the country's largest loan servicers, NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICES ("Defendant" or "SHELLPOINT").  SHELLPOINT is employed by

lenders to "service" mortgages on their behalf. Plaintiffs and the Class Members are homeowners whose homes have been in foreclosure. SHELLPOINT is servicer of the mortgage loans which encumber Plaintiffs' and Class Members' homes. As a servicer, SHELLPOINT regularly acts as a debt collector.

**PARTIES JURISDICTION AND VENUE**

7.      Plaintiffs, MARC WEINBERGER and KAREN WEINBERGER are married individual citizens of the State of Florida, residing in Broward County.  At all times material, they occupied the property at issue, located at 12170 SW 51st Court, Ft. Lauderdale, FL 33330 (the "Subject Property").

8.      Defendant, SHELLPOINT is a registered fictitious name for NEWREZ LLC a Delaware limited liability corporation with its principal place of business in Fort Washington, Pennsylvania.  At all times material, Defendant SHELLPOINT is and was a loan servicer as that term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b).  Moreover, SHELLPOINT services the loan obligation that's secured by a mortgage upon the Subject Property.

9.      The subject loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by Defendant SHELLPOINT as account number ******3210.  A copy of the applicable note and mortgage loan documents encumbering the Subject Property are attached as Exhibit "A".

10.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA and RESPA, federal statutes. The Court also has supplemental jurisdiction over the FCCPA and FDUPTA claims under 28 U.S.C. § 1367, because these claims

are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiff and Defendant.  This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

12.     Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## LEGAL FRAMEWORK APPLICABLE TO THE CLAIMS
## FDCPA STATUTORY STRUCTURE

13.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

14.     The FDCPA generally prohibits debt collectors, including SHELLPOINT, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

a.  False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

b.  False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id*. at § 1692e(2)(B);

c.  "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and

d.  "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

## FCCPA STATUTORY STRUCTURE

15.     The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

16.     Like the FDCPA, the FCCPA prohibits persons, including SHELLPOINT, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

17.     Specifically, the FCCPA states that no person, including SHELLPOINT, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat. The FCCPA defines both "debt" and "consumer

debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

## FDUTPA STATUTORY STRUCTURE

18.    FDUTPA is a Florida State consumer protection statute designed to protect the consuming public from those who engage in unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Fla. Stat. §501.202(2).

19.    FDUTPA imposes liability on any person or entity who engages in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…"  Fla. Stat. § 501.204(1).

20.    The remedies available under FDUTPA "are in addition to remedies otherwise available for the same conduct under state or local law."  Fla. Stat. § 501.213; *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. 2d DCA 1997).

## FACTUAL ALLEGATIONS

21.    SHELLPOINT is an entity that at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiffs, as defined by 15 U.S.C § 1692a(5) and by Fla. Stat. § 559.55(7).

22.    SHELLPOINT is a "debt collector" as defined in the FDCPA, § 1692a(6) and Fla. Stat. § 559.55(7), in that it acquired the servicing of the loans at issue after default and uses the

U.S. Mail in a business for the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due by another.

23.     SHELLPOINT is a mortgage loan servicer that regularly services mortgage loans in Florida, including loans owned or assigned by Fannie Mae/Freddie Mac.

24.     The loan servicer's duties and obligations are clearly filled in and defined by the Fannie Mae or Freddie Mac written Seller/Servicer Guidelines (the "Guidelines") when the loan is either serviced by the lender itself or sold to third-party servicer entities.

25.     In this instance, the loans at issue affecting Plaintiffs and the Class Members are serviced by SHELLPOINT; therefore, SHELLPOINT is required to comply with all servicing guidelines.

26.     In its role as mortgage loan servicer, SHELLPOINT was responsible for preparation of items concerning the Note and Mortgage including, but not limited to, preparing and sending monthly statements, accounting for credit and debits on the Note, calculating, collecting, and disbursing escrow amounts, sending notices, overseeing the judicial foreclosure process including providing information for the same, and calculating payoff figures and transmitting payoff figures.

27.     Payoff statements generated by SHELLPOINT are uniform in composition and form.

28.     SHELLPOINT is a mortgage "servicer" as that term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(i)(2).  As stated above, SHELLPOINT is the current servicer of

the notes and mortgages on real property that secure those notes, owned by Plaintiffs and the Members of the Class.

29.     On May 21, 2007 Plaintiffs purchased the Subject Property secured by a promissory note and mortgage in the amount of $189,000.00 in favor of Homecomings Financial, LLC as lender, for which the servicing rights of the mortgage loan for the subject property were assigned to SHELLPOINT.

30.     Due to financial hardship, Plaintiffs became delinquent in payment and defaulted on their mortgage.

31.     On March 5, 2014 foreclosure proceedings on the subject mortgage were instituted by Green Tree Servicing LLC, the apparent successor to the Lender, in the Circuit Court of the Seventeenth judicial Circuit in and for Broward County, Case No: CACE-14-004643, for which judgment was entered on January 29, 2019.

32.     On or about October 20, 2021 the Weinbergers, through their authorized agent, sent a written request to SHELLPOINT for an accurate payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3).

33.     On or about October 21, 2021, SHELLPOINT responded to Plaintiffs' payoff request by sending a faxed statement purporting to be a payoff quote.  However, Defendant SHELLPOINT's October 21, 2021 payoff letter was inaccurate as it contains a line item of charges which are completely vague and identified only as "Fees."  The composition and the amounts comprising the charges for "Fees" is not completely itemized or disclosed.  Indeed, many of the items comprising the "Fees" under the heading of "Fee Details" are vague themself, with no explanation as to their propriety; they are just titled as "FC Costs".  Indeed, there is no

indication that the amounts of the charges contained within the "Fees" are estimates or were actually incurred or even owed by Plaintiffs.   A copy of SHELLPOINT's October 21, 2021 payoff letter is attached hereto as Exhibit B.

34.     Additionally, many of the amounts which comprise the "Fee Details" appear to be fees for "Attorney Costs" or "Court Costs" for which the amount of same was not sought or awarded in the underlying foreclosure action as is required by Florida law.

35.     In addition to the vagueness of "Fees" the October 21, 2021 Payoff Letter contains demands for payments for "Funds owed by borrower" Like the "Fees", the composition and the amounts comprising the charges for "Funds owed by borrower" is not completely itemized or disclosed.   Indeed, the items comprising the "Funds owed by borrower" under the heading of "Funds Owed by Borrower Details" are vague themself, with no explanation as to their propriety; they are just titled as "Escrow Only Payment".   Indeed, there is no indication that the amounts of the charges contained within the "Escrow Only Payment" are estimates or were actually incurred or even owed by Plaintiffs.   The total amount being represented at the amount due to SHELLPOINT on the October 21, 2021 Payoff Letter was $377,587.98

36.     SHELLPOINT, sent additional Payoff Letters, without further request, on November 1-5, 2021 and November 9, 2021.

- The November 1, 2021 Payoff Letter total amount demanded was $377,638.44;

- The November 2, 2021 Payoff Letter total amount demanded was $377,921.86;

- The November 3, 2021 Payoff Letter total amount demanded was $377,871.40;

- The November 4, 2021 Payoff Letter total amount demanded was $378,443.40;

- The November 5, 2021 Payoff Letter total amount demanded was $379,015.40; and

● The November 9, 2021 Payoff Letter total amount demanded was $384,094.40.

SHELLPOINT did not provide any explanation as to the source or reason, nor can one be gleaned from the Payoff Letters, as to the reason for the difference in payoff amounts due. Copies of the Payoff Letters described above are attached hereto as Compound Exhibit "C."

37.     SHELLPOINT is fully aware and has actual knowledge that the standard mortgage loan agreements it services, including those of the Plaintiffs, do not authorize the charging of fees which are estimates or not actually incurred such as those contained in the "Fees" and "Funds owed by borrower."  Specifically, as servicer, SHELLPOINT has direct access to and copies of the standard mortgage loan agreements for Plaintiff and the Members of Class.  SHELLPOINT as a sophisticated and experienced servicer has actual knowledge of the types and amounts of fees it is allowed to charge pursuant to both the standard mortgage loan agreement and the servicing guidelines it is bound by.

38.     SHELLPOINT knows that demands for payment containing the non-itemized amorphous charge of Fees" and "Funds owed by borrower" are misleading as they do not give consumers, such as Plaintiffs and Class Members, the ability to knowledgably assess the validity of the claimed debt.

39.     Additionally, these demands for fees for "Fees" and "Funds owed by borrower" were a direct breach of each of the following provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the standard mortgage loan agreement permitted SHELLPOINT to recover "amounts disbursed" in protecting the lender's interest and rights in the standard mortgage loan agreement; (2) Paragraph 14 of the standard mortgage loan agreement prohibited SHELLPOINT from charging estimated fees, unauthorized fees, or

excessive fees, stating '[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; and (3) Paragraph 22 of the standard mortgage loan agreement permitted SHELLPOINT to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans.

40.     Therefore, SHELLPOINT also knew demanding payment of these fees was not permitted because it violated the very mortgage loan agreements it serviced.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following "National Class":

> All persons in the United States who were charged for fees that were not enumerated or explained on a payoff statement, within a category identified only as "Fees" or "Funds owed by borrower."

42.     In addition to the national class, Plaintiffs bring a subclass on behalf of Florida residents pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the "Florida Class":

> All persons in the State of Florida who were charged for fees that were not enumerated or explained on a payoff statement, within a category identified only as "Fees" or "Funds owed by borrower."

43.     Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

44.     Excluded from the Class are persons whose Payoff Statements according to SHELLPOINT records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and Defendant, and any

subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

45.     Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action.   The disposition of the claims in a class action will benefit both the parties and the Court.  The exact number of class members can be determined through discovery and review of SHELLPOINT's business records.

46.     The proposed class is ascertainable because it is defined by reference to objective criteria.  In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by SHELLPOINT.

47.     In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiffs') are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

48.     Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff is a member of the Class. Her claims are typical of all other Class Members.  All Class Members' claims are unified, as all were victims of the same collection and charging practices.

49.     Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will adequately represent the class because she has interests in common with the proposed Class Members and she has retained attorneys who are experienced in class action litigation.

50.     Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiff.

Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

    a.  Whether SHELLPOINT's impositions of "Fees" and "Funds owed by borrower" charges not being enumerated are deceptive, misleading and violate the FDCPA;

    b.  Whether SHELLPOINT's impositions of "Fees" and "Funds owed by borrower" charges not being enumerated are deceptive, misleading and violate the FCCPA;

    c.  Whether SHELLPOINT's impositions of "Fees" and "Funds owed by borrower" charges not being enumerated are deceptive, misleading and violate the FDUTPA;

    d.  Whether Plaintiffs and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof;

    e.  Whether Plaintiffs and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof; and

    f.  Whether Plaintiffs and Class Members are entitled to statutory damages under the FDUTPA and the amounts thereof;

    g.  The proper measure of disgorgement and/or actual and/or punitive damages and/or restitution, as well as other recovery to the class, including fees and costs.

51.    Further, the prosecution of separate actions by individual members of the class would create a risk of:

a.   Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and

b.   Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

52.   The class action method is appropriate for the fair and efficient prosecution of this action.

53.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each Class Member's claims are small relative to the complexity of the litigation, and due to the financial resources of SHELLPOINT, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and SHELLPOINT's misconduct will proceed without remedy.

54.   Even if members of the Class could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and

provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

55.     Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Classes as a whole.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION ACT 15 USC § 1692e

56.     Plaintiffs repeat and reallege paragraphs 1 through 40 as if fully stated herein.

57.     Plaintiffs and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

58.     The mortgage loans encumbering the property of Plaintiffs and Class Members, which SHELLPOINT service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

59.     Additionally, the improper fees being charged and collected, in the form of the "Fees" and "Funds owed by borrower" are incidental to the principal obligation and subject to the Act. 15 U.S.C. § 1692f(1).

60.     SHELLPOINT is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiffs and Class Members via Payoff Statements. And SHELLPOINT acquired the servicing rights of Plaintiffs and each Class Member's mortgage after they were in default.

61.     SHELLPOINT engaged in direct "communications" with Plaintiffs and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

62.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

63.     Congress created shared, substantive statutory rights of Plaintiff and the Class Members to be privately enforced and protected under the FDCPA, which SHELLPOINT has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

64.     15 U.S.C. §1692e states, in relevant part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B)      any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ………
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

65.     Based on the foregoing allegations, SHELLPOINT used deceptive means of collecting debts—which contained undisclosed fees for "Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for, incorporating them —in violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

66.     Based on the foregoing allegations, SHELLPOINT violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for, incorporating them, it falsely or in a misleading manner stated, or misrepresented, the amount, character, or status of the amounts needed to payoff Plaintiffs' and Class Members' mortgage debts.

67.     Based on the foregoing allegations, SHELLPOINT violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for, it falsely or in a misleading manner stated, or misrepresented, the compensation that it might lawfully receive from Plaintiffs and Class Members.

68.     These violations of FDCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FDCPA rights.

69.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

## COUNT II

## VIOLATION OF THE FAIR DEBT COLLECTION ACT 15 USC § 1692f

70.     Plaintiffs repeat and reallege paragraphs 1 through 40 as if fully stated herein.

71.     Plaintiffs and each Class Member were a "consumer" as defined by 15 U.S.C. § 1692a(3).

72.     The mortgage loans encumbering the property of Plaintiffs and Class Members, which SHELLPOINT service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

73.     Additionally, the improper fees being charged and collected, in the form of the "Fees" and "Funds owed by borrower" are incidental to the principal obligation and subject to the Act. 15 U.S.C. § 1692f(1).

74.     SHELLPOINT is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiffs and Class Members via Payoff Statements. The Payoff Statements described above indeed uniformly confirmed this by identifying SHELLPOINT as a debt collector. And SHELLPOINT acquired the servicing rights of Plaintiffs and each Class Member's mortgage after they were in default.

75.     SHELLPOINT engaged in direct "communications" with Plaintiffs and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

76.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

77.     15 U.S.C. § 1692f states, in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law

78.     Based on the foregoing allegations, SHELLPOINT used unfair means of collecting amounts for "Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for, incorporating them in violation of 15 U.S.C. § 1692f, because the amounts were not expressly authorized by Plaintiffs' and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

79.     These violations of FDCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FDCPA rights.

80.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorneys' fees and costs under 15 U.S.C. § 1692(k).

**COUNT III**

**VIOLATIONS OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT FLA. STAT. §§ 501.201, et seq.**

81.     Plaintiffs repeat and reallege paragraphs 1 through 40 as if fully stated herein.

82.     Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, *et seq.*) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

83.     A practice is "deceptive" within the meaning of Florida's Unfair and Deceptive Trade Practices Act if it is likely to mislead consumers.

84.     Plaintiffs and Class Members are consumers as defined by section 501.203, Fla. Stat. SHELLPOINT is engaged in trade or commerce within the meaning of the FDUTPA.

85.     SHELLPOINT violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

86.     Plaintiffs and Class Members are consumers who have been aggrieved SHELLPOINT's unfair and deceptive practices by charging on payoff statements "Fees" and "Funds owed by borrower." Without proper itemization or description of what the charges may be for, in connection with their residential mortgage loans owned or serviced by SHELLPOINT.

87.     The harm suffered by Plaintiffs and the Class Members was directly and proximately caused by the deceptive and unfair practices of SHELLPOINT, as more fully described herein.

88.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and the Class Members make claims for actual damages, statutory damages, attorneys' fees and costs.

89.     SHELLPOINT still utilizes many of the deceptive acts and practices described above. Plaintiffs and the Class Members have suffered and will continue to suffer irreparable harm if SHELLPOINT continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Class Members to obtain both declaratory or injunctive relief to put an end to SHELLPOINT's unfair and deceptive scheme.

### COUNT IV

### VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT FLA STAT § 559.72(9)

90.     Plaintiffs repeat and reallege paragraphs 1 through 40 as if fully stated herein.

91.     Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

92.     SHELLPOINT is a "person" within the meaning of the FCCPA.

93.     The mortgage loans encumbering the properties of Plaintiffs and Class Members, and being serviced by SHELLPOINT, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

94.     The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

95.     The Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced and protected privately under the FCCPA, which SHELLPOINT violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

96.     Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

97.     Based on the foregoing allegations, SHELLPOINT violated Section 559.72(9), Florida Statutes, by attempting to collect undisclosed fees for Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for,

incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

98.     Based on the foregoing allegations, SHELLPOINT violated Section 559.72(9), Florida Statutes, by attempting to collect Fees" and "Funds owed by borrower" without proper itemization or description of what the charges may be for, incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

99.     These collection practices by SHELLPOINT hides the true character of the alleged debt owed by Plaintiff and Class Members and impairs their ability to knowingly assess the validity of the alleged debt.

100.     SHELLPOINT knowingly sent the Payoff Statements and attempted to collect monies from Plaintiffs and the Class Members through means that were clearly misleading on its face.

101.     These violations of FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

102.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.


**JURY DEMAND**

103.     Plaintiffs respectfully request a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, on behalf of themselves and the Class, respectfully requests this Court to award against SHELLPOINT in favor of Plaintiff and the Class all of the following:

a.  Certifying Plaintiffs' claims for class treatment under Federal Rules of Civil Procedure 23(a) and (b)(3), appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as counsel for the Classes;

b.  For an order awarding compensatory damages on behalf of Plaintiffs and the Class in an amount to be proven at trial;

c.  For judgment for Plaintiff and the Class on their claims in an amount to be proven at trial, for compensatory damages caused by Defendant's unfair or deceptive practices, for treble damages, and for exemplary damages to each Class member for each violation;

d.  For an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices, and any other injunctive relief as may appear necessary and appropriate;

e.  For judgment for Plaintiff and the Class on their federal and state law claims, in an amount to be proven at trial;

f.   For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

g.  For an order awarding Plaintiffs and the Class their attorneys' fees and costs; and,

h.  Any other relief for Plaintiffs and the Class the Court deems just and proper.

*The remainder of this page is intentionally blank. Signature page to follow.*

Dated: November 12, 2021.

Respectfully Submitted

By: *Scott D. Hirsch*
Scott David Hirsch
**SCOTT HIRSCH LAW GROUP**
**Fla. Bar No. 50833**
**6810 N. State Road 7**
**Coconut Creek, FL 33073**
**Tel: (561) 569-7062**
**Email: scott@scotthirschlawgroup.com**

**and**

**/s/ Jessica L. Kerr**
**THE ADVOCACY GROUP**
Jessica L. Kerr

Fla. Bar. No. 92810

100 S. Biscayne Blvd, Suite 300
Miami, FL 33131
Telephone: (954) 282-1858
Facsimile: (954) 282-8277
Email: *jkerr@advocacypa.com*
*Attorneys for Plaintiff*