**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**MARC WEINBERGER and
KAREN WEINBERGER,** individually and
on behalf of those similarly situated**,**

           **Plaintiff,**                    CASE NO. 0:21-cv-62337-RS

**v.**

**NEWREZ LLC d/b/a SHELLPOINT
MORTGAGE SERVICES,**

           **Defendant.**
_____/

**NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICES'
<u>MOTION TO DISMISS COMPLAINT</u>**

**I.     INTRODUCTION**

The Weinbergers claim multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (**FDCPA**), the Florida Consumer Collection Practices Act, FLA. STAT. §§ 559.55, *et seq.* (**FCCPA**), and the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201, *et seq*. (**FDUTPA**), based entirely on payoff statements Shellpoint[1] provided at the Weinbergers' counsel's request, in relation to a pending foreclosure proceeding, and as required by law.  Shellpoint was not engaged in debt collection or trade or commerce.

For these reasons, and others argued below, Shellpoint asks that the complaint be dismissed with prejudice.

---

[1] NewRez LLC d/b/a Shellpoint Mortgage Servicing is referred to here as "**Shellpoint**."

## II.    COMPLAINT ALLEGATIONS[2]

On May 21, 2007, Marc and Karen Weinberger executed a promissory note and mortgage in the amount of $189,000.00 with Homecomings Financial, LLC.  (Dkt. 1 (**Compl.**) ¶¶ 9, 29, & Ex. A.)  The mortgage encumbers real property in Florida.  (*Id*.)

The Weinbergers agreed that "if Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument."  (Compl. Ex. A ¶ 9.)

The Weinbergers also agreed:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(Compl. Ex. A ¶ 14.)

At some point prior to 2014, the Weinbergers defaulted on their loan repayment obligations.  (Compl. ¶ 30).  On March 5, 2014, Green Tree Servicing LLC (**Green Tree**), as successor-in-interest, instituted a foreclosure action against the Weinbergers in Broward County Circuit Court, Case No: CACE-14-004643.  (*Id.* ¶ 31.)  Final judgment was entered against the Weinbergers on January 29, 2019.  (*Id*.; *see also* COMP. EX. 1 (Foreclosure Judgment).)[3]  The property was set for public sale, on or around November 16, 2021.  (*Id.* (Posted Final Sale).)

---

[2] All allegations from the complaint are taken as true only for purposes of this motion.

[3] Shellpoint supplements the allegations with publicly available foreclosure records.  Shellpoint requests the Court take judicial notice of Composite Exhibit 1, which is a copy of the foreclosure judgment and the foreclosure posted final sale scheduled for November 16, 2021, as it contains matters of public record that are not subject to dispute.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

Prior to the sale, the Weinbergers—through their foreclosure counsel—asked Shellpoint for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3).[4] (*See* Compl. ¶ 32.) Shellpoint provided the Weinbergers' counsel a payoff on October 21, 2021. (*Id.* ¶ 33.) An additional six payoff statements were sent to the Weinbergers' counsel in early November. (*Id.* ¶ 36.) All statements were issued by Shellpoint in advance of a scheduled public sale of the property pursuant to the provisions of the final judgment. (*See* COMP. EX. 1.)

On November 12, 2021, the Weinbergers filed this case against Shellpoint, alleging the payoff statements violated FDCPA, FCCPA, and FDUTPA. Though not entirely clear, the Weinbergers appear to claim the payoff statements were inaccurate and vague, complain there is "no indication that the amounts of the charges contained within . . . are estimates or were actually incurred or even owed by Plaintiffs," and complain that the statements included "attorney costs" or "court costs" that were not sought or awarded in the foreclosure action. (Compl. ¶¶ 33-35.)

The Weinbergers seek to certify a class action and request compensatory, treble, and exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and an injunction against Shellpoint. The Weinbergers do not seek statutory damages.

### III.   ARGUMENT

**A.   Threshold Arguments for Dismissal.**

    **1.   Failure to Provide Pre-suit Notice and Cure.**

The Weinbergers are required under the mortgage to provide notice and an opportunity to take "corrective action" prior to filing suit for any action "that arises from the other party's actions pursuant to this Security Instrument." (Compl. Ex. A ¶ 20.) As courts in this district

---

[4] Shellpoint asks this Court to take judicial notice that the statements were directed to the Weinbergers' counsel, Bruce Botsford, Esq., at the same address as stated in the foreclosure judgment (1615 SW 2nd Ave, Ft. Lauderdale, FL 33315). *Compare* Compl. EXS. B & C *with* COMP. EX. 1.

have held, this provision unquestionably applies to mortgage breach claims as well as to statutory and common law claims that "arise" from the mortgage or assert a "breach" or "duty owed by reason of" the mortgage. *See Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (dismissing statutory claims, including FDCPA and FCCPA claims for failure to provide pre-suit notice); *Sotomayor v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016) (same); *see also Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (dismissing both statutory and unjust enrichment claims for failure to allege compliance with mortgage paragraph 20).

The Weinbergers contend that the payoff statements breached the mortgage (Compl. ¶¶ 39) and they base their FDCPA, FCCPA, and FDUTPA claims on those same payoff statements. (*See e.g.*, *id*. ¶¶ 39-40 ("Shellpoint also knew demanding payment of these fees was not permitted because it violated the very mortgage loan agreements it serviced."), ¶ 78 (arguing that because the underlying contract did not "expressly authorize[]" the charge, the charge violated FDCPA)). The notice and cure provision unquestionably applies.

The Weinbergers failed to comply with mortgage paragraph 20. The Weinbergers fail to plead that all conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred. The complaint contains no facts to establish how the Weinbergers complied with pre-suit notice or should otherwise be excused from complying with the conditions they agreed to follow in the mortgage. Pre-suit notice and opportunity for corrective action was therefore not timely provided. Dismissal is appropriate on this basis alone. *See, e.g., Pierson v. Ocwen Loan Servicing, LLC*, 2017 WL 634164, at *3 (S.D. Fla. Feb. 15, 2017) (dismissal with prejudice is appropriate where amendment would be futile). Prejudicial dismissal is particularly appropriate here because the Weinbergers and their counsel

are clearly aware of the mortgage requirements as they cite other provisions of the mortgage in their complaint. But yet, they chose to ignore mortgage paragraph 20 and filed suit first. Shellpoint should have been given notice of the Weinbergers' complaint, an opportunity to review the dispute, and an opportunity to take corrective action. Because it was not, dismissal with prejudice is appropriate.

    **2.    No FDCPA or FCCPA Debt Collection.[5]**

The Weinbergers claim Shellpoint violated FDCPA and FCCPA by sending a materially false or misleading payoff statement which did not itemize fees to their satisfaction.

FDCPA and FCCPA "do[ ] not apply to every communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010). Instead, these claims require the disputed statement to be considered debt collection or made in connection with debt collection. *See* 15 U.S.C. §§ 1692e, & 1692f; FLA. STAT. § 559.72.

Neither FDCPA nor FCCPA define "debt collection," and no bright-line rule has been established. "[C]ourts have developed a factor-based analysis that takes into account: '(1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.'" *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1240-41 (S.D. Fla. 2015).

Correspondence sent in response to borrower requests are not debt collection triggering FDCPA or FCCPA liability. *See, e.g.*, *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d

---

[5] When "applying or construing" FCCPA, "due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to [FDCPA]." FLA. STAT. § 559.77(5). Shellpoint will discuss the Weinbergers' FDCPA and FCCPA claims together where appropriate.

1278, 1283 (M.D. Fla. 2015) (communications "sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector[;] . . . they do not fall within the ambit of the FDCPA.") (citing *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430-32 (6th Cir. 2015) (letters that "were not made 'in connection' with debt collection activities because their 'animating purpose' was not to induce [debtor] to make payments on her defaulted mortgage.")); *McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) ("letters sent for informational purposes" do not trigger FDCPA liability where plaintiff inquired about her loan balance to defendant and defendant provided a statement).

Similarly, correspondence sent in compliance with legal requirements are also not debt collection. *See, e.g.*, *Jones v. Select Portfolio Servicing, Inc*., 2018 WL 2316636, at *5 (S.D. Fla. May 2, 2018) (plaintiff did not state a claim under the FCCPA or FDCPA with respect to the monthly mortgage statements sent pursuant to federal law); *Brown v. Select Portfolio Servicing, Inc*., 2017 WL 1157253, at *2 (S.D. Fla. Mar. 24, 2017) (monthly mortgage statement sent in compliance with TILA did not constitute debt collection communications); *Antoine v. Carrington Mortg. Servs., LLC*, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017) (monthly mortgage statements are not debt collection if sent in compliance with Regulation Z); *Vanecek v. Discover Financial Services, LLC*, 2015 WL 6775633, at *1 (Fla. 17th Cir. Ct. 2015) ("the monthly billing statement was not an attempt to collect a debt as a matter of law").

The statements at issue are not debt collection.  The payoff statements were issued in response to requests by the Weinbergers' foreclosure counsel (*see* Compl. EX. C (noting they payoffs were sent in response to "Your Payoff Request"), and Shellpoint was required by law to provide them.  12 C.F.R. § 1026.36(c)(3); FLA. STAT. § 701.04(1).

The Weinbergers do not even plead the payoff statements were attempts to collect a debt. Nor could they. The payoff statements do not contain any language from Shellpoint that would show the statements were an attempt to collect a debt or an attempt to induce payment. (*See* Compl. Ex. C.) As the payoff statements were "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely," *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011), the Weinbergers have failed to state a FDCPA or FCCPA claim. *See also Bohringer*, 141 F. Supp. 3d at 1242 ("Statements of account are not debt collection activity; rather, they are normal incidents of loan servicing.").

### 3. Florida's Litigation Privilege Extinguishes All State Law Claims.

"[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes, Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). This includes "the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto." *Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, 1325-26 (Fla. 4th DCA 1983) (quotations omitted).[6] "The rationale behind the litigation privilege is to free [participants in litigation] to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *R.H. Ciccone Props., Inc. v. JPMorgan Chase Bank, N.A.*, 141 So. 3d 590, 591 (Fla. 4th DCA 2014).

---

[6] "While the litigation privilege is an affirmative defense, it can be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint." *LatAm Invest., LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 245 (Fla. 3d DCA 2011); *see also* FLA. R. CIV. P. 1.110(d) ("Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)."). "Whether the absolute immunity privilege applies is a question of law to be decided by the court." *Estape v. Seidman*, 269 So. 3d 565, 568 (Fla. 4th DCA 2019).

Florida's "litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). It applies to FCCPA and FDUTPA claims. *See Solis v. CitiMortgage, Inc.*, 699 F. App'x 891, 894 (11th Cir. 2017) ("The privilege applies to statutory violations. . . ."); *Perez v. Bureaus Inv. Group No. II, LLC*, 2009 WL 1973476, at *3 (S.D. Fla. Jul. 8, 2009) (privilege barred FCCPA claim as "the filing of the collection lawsuit clearly relates to a judicial proceeding, and is the sole basis of plaintiff's FCCPA claim in the present suit."); *CWELT-2008 Series 1045 LLC v. PHH Corp.*, 2020 WL 2744191, at *8-9 (S.D. Fla. May 27, 2020) (dismissing FDUTPA "case about charging an improper debt" under litigation privilege); *Miceli v. Dyck-O'Neal, Inc.*, 2016 WL 7666167, at *5 (M.D. Fla. Aug. 9, 2016) ("The privilege applies to statutory causes of action, including the FCCPA and FDUTPA.").

The Weinbergers' FCCPA and FDUTPA claims rest entirely on payoff statements the Weinbergers' counsel requested ahead of a scheduled public sale of their property. (Compl. Ex. C & Comp. Ex. 1.) As the payoff statements clearly relate to the pending foreclosure, the litigation privilege bars the FCCPA and FDUTPA claims. *See, e.g.*, *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004) ("[E]vents taking place outside the courtroom during discovery . . . are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings."); *Piguet v. J.P. Morgan Chase Bank, N.A.*, 2017 WL 1655234, at *5 (S.D. Fla. May 2, 2017) ("Florida's litigation privilege applies to settlement activities . . . Plaintiffs cannot bring a cause of action related to the Defendants' actions . . . related to settlement of the state court foreclosure proceedings."); *Bloch v. Wells Fargo Home Mortg.*, 2012 WL 12862806, at *5 (S.D. Fla. June 12, 2012) ("Any written

correspondence to Plaintiffs during the underlying foreclosure lawsuits necessarily is protected by the litigation privilege, and cannot form the basis of an FCCPA claim.").

**B.      The Weinbergers' Claims Fail on The Merits.**

    **1.      The Weinbergers Fail To Delineate Unpermitted Charges.**

The Weinbergers make conclusory claims that "demands for payment containing the non-itemized amorphous charge of 'Fees' and 'Funds owed by borrower' are misleading . . . (Compl. ¶ 38) but fail to identify any fee as impermissibly charged or misleading.  The Weinbergers also fail to provide support for any of their allegations.  The vague and conclusory nature of these allegations are insufficient to state any claim for relief.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Everything listed by the Weinbergers for FDCPA § 1692f violations are all categories allowed by the loan documents (e.g., foreclosure costs, attorneys' fees, inspections, late fees, appraisals) and are recoverable under the mortgage.  (Compl. Ex. A ¶ 9, 14.)  The Weinbergers' complaint boils down to mere criticisms that Shellpoint's line-item descriptions of the charges were not satisfactorily explained.  Such allegations fail to state a claim.  *See, e.g.*, *Smith v. U.S. Bank N.A.*, 2018 WL 4489466, at *4 (N.D. Ohio Sept. 19, 2018) ("FDCPA does not prohibit unexplained representations to debtors rather, it prohibits "false, deceptive, or misleading" representations").

    **2.      All Fees Assessed Against The Weinbergers Were Appropriate.**

The Weinbergers complain that the "Attorney Costs" or "Court Costs" included in the payoff statements were "not sought or awarded in the underlying foreclosure action as required by Florida law."  (Compl. ¶ 34.)

The Weinbergers cite no Florida law supporting this claim.  To the extent they are relying on Rule 1.525, Florida Rules of Civil Procedures, they are misguided.

Rule 1.525 states that "[a]ny party seeking a judgment taxing costs, attorneys' fees, or both shall serve a motion no later than 30 days after filing of the judgment, including a judgment of dismissal, or the service of a notice of voluntary dismissal, which judgment or notice concludes the action as to that party." But, "once the trial court determines entitlement to attorneys' fees and costs, the thirty-day time requirement for filing motions for attorneys' fees and costs under rule 1.525 is no longer necessary. The parties are on notice with the trial court's ruling on entitlement that the amount of the award will be determined at a later date." *AmerUs Life Ins. Co. v. Lait*, 2 So.3d 203, 207 (Fla. 2009).

The foreclosure judgment did find fee entitlement, and reserved jurisdiction as to the amount. (COMP. EX. 1.) Shellpoint (or any foreclosure plaintiff) was not required to ask the Court to determine the amounts of fees and costs to award within 30 days.

In addition, a servicer's entitlement to demand attorney's fees actually incurred in litigation is not conditioned on obtaining a judgment awarding such amounts. The mortgage allows all reasonable fees and costs incurred by Shellpoint in pursuing remedies and protecting its interests to be passed to the borrower. (Compl. EX. A ¶ 9, 14.) And, while the mortgage limits Shellpoint to actions not prohibited by law, the Weinbergers' cite no law prohibiting the challenged conduct.

To the contrary, Florida state and federal courts have held that Shellpoint's conduct in adding incurred fees and costs to the debt in accordance with the mortgage is proper. *See, e.g.*, *Czaban v. Bayview Loan Servicing, LLC*, 2019 WL 5690633, at *2 (N.D. Fla. Nov. 1, 2019) (dismissing plaintiffs' claims under FDCPA and FCCPA where the mortgage agreement authorized the servicer to charge attorneys' fees in connection with the borrower's default); *Prescott v. Seterus, Inc.*, 635 F. App'x 640, 644 (11th Cir. 2015) ("The security agreement does

obligate [borrower] to pay for attorney's fees and other expenses that [servicer] actually incurred as a result of his default . . . .").

*Czaban* is instructive here. In that case, Mr. Czaban brought suit under the FDCPA and the FCCPA because his loan servicer attempted to collect from him "attorney's fees and costs related to [a] 2008 foreclosure action in which he prevailed." *Czaban*, 2019 WL 5690633 at *2. The court dismissed the complaint with prejudice finding this allegation "refuted by paragraph 14 of the mortgage agreement, which authorizes the servicer to charge fees for services . . . in connection with Borrower's default . . . including . . . attorneys' fees." *Id*. The court explained "[t]he fee provision is not contingent on the lender being the prevailing party, so the fact that [borrower] was the prevailing party in the 2008 foreclosure case does not necessarily preclude Defendant from seeking to collect the attorney's fees incurred in that case if and when Plaintiff defaults on the mortgage agreement." *Id*. at *2 n.9; *see also Savarese v. Schoner*, 464 So. 2d 695, 696 (Fla. 2d DCA 1985) ("[O]nce the default occurred the mortgagees were contractually entitled to attorney's fees for prosecuting their action . . .").

Like the mortgages at issue in *Czaban* and *Savarese*, the Weinbergers' mortgage states that Shellpoint is entitled to collect its reasonable fees and costs incurred pursuing its remedies and in protecting its interest in the property and mortgage rights. (Compl. Ex. A ¶ 9, 14.) Florida law confirms this provision is enforceable. *See, e.g., Prescott*, 635 F. App'x at 644.

Shellpoint was entitled to seek recovery of those incurred fees, especially since the foreclosure action was successfully granted against the Weinbergers. At best, the Weinbergers argument is that the fees incurred during the foreclosure cannot be passed on to them because those fees are unreasonable. But, whether the passed through fees and costs were reasonable is at most a contractual issue rather than an FCCPA claim. "The collection of attorneys' fees . . .

11

does not violate the FDCPA when an agreement between a debtor and a creditor expressly permits the collection of such fees." *Cheng v. Messerli & Kramer, P.A.*, 2007 WL 1582714, at *2 (D. Minn. May 30, 2007) (dismissing § 1692e and 1692f claims). This is so even where the debtor has challenged the fees as "patently unreasonable." *Id*. ("[A]n FDCPA claim cannot challenge the reasonableness of fess expressly authorized by the agreement creating the debt."). *See also Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946, 949-50 (N.D. Ind. 2006) ("[O]nce a debtor . . . agrees to pay attorneys' fees in the event of default, he cannot use the FDCPA to contest the reasonableness of those fees . . . .") (citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA.")). The mortgage confirms that Shellpoint is entitled to its fees incurred following the Weinbergers' default. It does not violate either the FDCPA or the FCCPA if or when Shellpoint adds them to the Weinbergers' account in a payoff statement.

   **3. The Weinbergers' FDUTPA Claims Do Not Satisfy Two Liability Elements.**

  To state a FDUTPA claim, a plaintiff must allege: "(1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." FLA. STAT. § 501.203(8).

  The payoff statements at issue were provided during the course of a judicial foreclosure proceeding and were provided at the borrower's request and as required by law. Shellpoint's actions as a loan servicer are not "trade or commerce" for FDUTPA liability. *Rodriguez v.*

12

*Ocwen Fin. Corp.*, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017) ("[A]ctions as loan servicers do not qualify as 'trade or commerce' under FDUTPA").

Even if Shellpoint was engaged in debt collection when it sent the payoff statements—it was not, see Part III.A, *supra*—debt collection is not "trade or commerce" for FDUTPA purposes. *See, e.g.*, *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012) ("Several courts have held that debt collection activities are not 'trade or commerce' for FDUTPA purposes."); *Blake v. Seterus, Inc.*, 2017 WL 543223, at *2 (S.D. Fla. 2017) ("An FDUTPA claim cannot be asserted against a defendant who is simply collecting a debt.").

The Weinbergers also fail to plead "actual damages." They admit they defaulted on their mortgage and had been in default for some time. (Compl. ¶ 30.) A foreclosure judgment was obtained by Green Tree on January 29, 2019. (*Id.* ¶ 31.) The Weinbergers fail to allege that, but for the alleged conduct of Shellpoint in including allegedly improper charges in the payoff statements, they could or would have redeemed the foreclosure judgment or tendered a payoff of the loan. The Weinbergers also do not allege that they paid or attempted to pay any of the amounts contained within the payoff statements or the contested fees at issue, nor do they allege that Shellpoint's alleged conduct reduced the value of their property that is the subject of the action. The Weinbergers have failed to plausibly allege they sustained any actual damages. *See, e.g.*, *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) ("Proof of actual damages is necessary to sustain a FDUTPA claim.").[7]

---

[7] The Weinbergers request a jury trial. The Weinbergers' expressly waived any right to jury trial for these claims. (Compl. EX. A ¶ 25.) Shellpoint, as a mortgage servicer, has standing to raise the jury trial waiver, *see, e.g., Hamilton v. Sheridan Healthcorp, Inc.*, 2014 WL 537343, at *3 (S.D. Fla. Feb. 11, 2014), and plans to file an appropriate motion to have the Court, rather than a jury, try this matter.

13

## IV.   CONCLUSION

The Weinbergers state no valid cause of action under any theory of recovery. Shellpoint provided payoff statements at the Weinbergers' request and as required by law. There was no debt collection activity or trade or commerce. Florida's litigation privilege extinguishes all state law claims too because all conduct occurred during and expressly related to a judicial proceeding (a foreclosure action). And, because neither the law nor the underlying contracts prevent Shellpoint from adding fees incurred after default to the account, it was not an FDCPA or an FCCPA violation to do so. Shellpoint requests dismissal of the complaint with prejudice.

Respectfully submitted,

**AKERMAN LLP**

*/s/ Marc J. Gottlieb*
William P. Heller, Esq.
Florida Bar No.: 987263
Email:  william.heller@akerman.com
Marc J. Gottlieb, Esq.
Florida Bar No. 827819
E-Mail: marc.gottlieb@akerman.com
201 East Las Olas Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 463-2700
Fax: (954) 463-2224

—and—

Celia C. Falzone, Esq.
Florida Bar No.: 0016439
Email:  celia.falzone@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, Florida  32202
Telephone:  (904) 798-3700
Fax: (904) 798-3730

*Counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on <u>January 11, 2022</u>, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF and served on all counsel or parties of record on the following service list via CM/ECF.

                <u>/s/ Marc J. Gottlieb</u>
                Attorney